UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
)
PETER DESILVA, )
)
      Plaintiff, )
)
      v. ) Civil Action No. 12-366 (RBW)
)
UNITED STATES DEPARTMENT OF )
HOUSING AND URBAN )
DEVELOPMENT, )
)
      Defendant. )
_____)

## MEMORANDUM OPINION

The plaintiff, Peter DeSilva, filed this civil case against the defendant, the United States Department of Housing and Urban Development ("HUD"), alleging violations of the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 (2012). See Complaint ("Compl.") ¶¶ 1, 5–9. Currently before the Court are the Defendant's Motion for Summary Judgment ("Def.'s Mot.") and the Plaintiff's Motion to Request Defendant to Supplement the Document Release ("Pl.'s Mot."). Upon careful consideration of the parties' submissions,[1] the Court concludes for the following reasons that it must grant the defendant's motion for summary judgment and deny the plaintiff's motion for the defendant to supplement its documents release.

---

[1] In addition to those submissions already identified, the Court considered the following filings in rendering its decision: (1) the Memorandum in Support of Defendant's Motion for Summary Judgment ("Def.'s Mem."); (2) the defendant's Statement of Material Facts as to Which There is no Genuine Dispute ("Def.'s Facts"); (3) the Plaintiff's Opposition to Defendant's Motion for Summary Judgment ("Pl.'s Opp'n"); (4) the Plaintiff's Statement of Disputed Material Facts as to Which There is a Genuine Issue ("Pl.'s Facts"); (5) the Defendant's Reply in Support of Its Motion for Summary Judgment ("Def.'s Reply"); and (6) the Defendant's Opposition to Plaintiff's Motion to Request Defendant to Supplement Document Release ("Def.'s Opp'n").

1

## I. BACKGROUND

The following facts are undisputed.[2] "On June 22, 2011, [the] [p]laintiff submitted a . . . FOIA . . . request to the [defendant's] [District of Columbia] Field Office" seeking records "concerning the project at Skyland Shopping Center." Def.'s Facts ¶ 1; see also Def.'s Mot., Exhibit ("Ex.") 1 (FOIA Request) at 1. "On September 8, 2011, by letter, the FOIA Liaison Officer notified [the p]laintiff that HUD had internally consulted with its Community Planning and Development Office." Def.'s Facts ¶ 2. That office "mistakenly responded to [the] [p]laintiff's initial June 22, 2011[] FOIA request that no records responsive to the FOIA request were available," and referred the plaintiff to the District of Columbia Department of Housing and Community Development and the Deputy Mayor for Planning and Economic Development for responsive materials. Id. ¶¶ 2–3.

The plaintiff appealed the denial of his FOIA request to the HUD Office of Regional Counsel on October 5, 2011. Id. ¶ 4. Subsequently, "[o]n October 27, 2011, the [Office of Regional Counsel], the component responsible for coordinating HUD's response to [the] [p]laintiff's FOIA appeal, sent electronic mailings to relevant components of HUD,"[3] and the "[Office of Regional Counsel] sought assistance" from those components "in providing a response to [the] [p]laintiff's FOIA request on appeal." Id. ¶ 5. "On or about November 7, 2011, the HUD Block Grant Office determined that the records response to [the] [p]laintiff's

---

[2] The "[p]laintiff contends that there exist genuine issues of material fact as to the matters set forth in paragraphs 11 and 12 of the defendant's [s]tatement" of facts, Pl.'s Facts ¶ 2. But, the "[p]laintiff agrees that there is no genuine issue as to the facts set forth in paragraphs 1, 2, 3, 4, 9, 10 of the defendant's [s]tatement" of facts, id. ¶ 1, and presents no facts to rebut paragraphs 5-8 or paragraph 13 of that statement. The Court therefore deems the facts in paragraphs 5-8 and paragraph 13 of the defendant's statement of facts conceded, see Fed. R. Civ. P. 56(e) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion."), and will rely on the defendant's statement of facts as set forth in those paragraphs.

[3] The relevant departments were HUD's District of Columbia Field Office, the FOIA Liaison Office, the Chief Counsel of the Community Development Block Grant Office, and the Office of Community Planning and Development. Def.'s Facts ¶ 5.

request were not maintained at HUD, but that the responsive materials were maintained by the District of Columbia Dep[artment] of Housing and Community Development." Id. ¶ 6. In a November 7, 2011 letter, "the [Office of Regional Counsel] notified [the] [p]laintiff that it had recently completed a monitoring review of the Skyland Project, but that the resulting report had not yet been completed." Id. ¶ 7 (citing Def.'s Mot., Ex. 6 (November 7, 2011 Letter from HUD to Elaine J. Mittleman, Esq. ("Nov. 7 Letter")). The November 7, 2011 letter also notified the plaintiff that "the Skyland Action Plans had previously been provided to" the plaintiff's attorney, and "therefore they were not provided in the" attachments to the letter. Id. ¶ 8 (citing Def.'s Mot., Ex. 6 (Nov. 7, 2011 Letter) at 1–2). The letter further stated "that the Skyland Action Plans are public documents, which are posted on the District of Columbia's [Department of Housing and Community Development] Official web-site." Id. "Finally, the November 7, 2011[] letter also mistakenly notified [the] [p]laintiff that no responsive documents to [his] request were located because HUD originally and mistakenly limited . . . [the] search and scope for responsive materials to the HUD [District of Columbia] Office of Community Planning and Development." Id. ¶ 8.

A few months thereafter, on March 7, 2012, the plaintiff filed this action against the defendant. Id. ¶ 9. "On or about December 13, 2012, HUD sent [the] [p]laintiff an executed copy of the Monitoring Review Letter, which was also sent to the [District of Columbia] Department of Housing and Community Development." Id. ¶ 10 (citing Def.'s Facts, Exs. 7 (December 13, 2012 letter from HUD to Michael D. Rose ("Monitoring Review Letter")), 13 (Declaration of Lawrence E. McDermott ("McDermott Decl.")))). "In or about December 2012 and January 2013, four senior HUD employees were identified who had oversight and involvement in the Skyland Shopping Center Project," and these employees performed searches

3

for responsive records, which were subsequently provided to the plaintiff. Id. ¶¶ 11–12; see Pl.'s Facts ¶¶ 3–4 (disputing the adequacy and reasonableness of the search). In releasing records to the plaintiff, the defendant "withheld, in full, [fifty-four] pages of responsive material pursuant to FOIA exemptions (b)(4) and (b)(5)." Def.'s Facts ¶ 13 (citing 5 U.S.C. § 552 (b)(4)-(5); Def.'s Mot., Ex. 12 (Vaughn Index); Def.'s Mot., Ex. 13 (McDermott Decl.) ¶ 14). The defendant now moves for summary judgment, and the plaintiff moves for an order requiring the defendant to supplement its document release. Both motions are opposed.

## II. STANDARD OF REVIEW

A court reviews an agency's response to a FOIA request de novo, 5 U.S.C. § 552(a)(4)(B), and "FOIA cases typically and appropriately are decided on motions for summary judgment," ViroPharma Inc. v. HHS, 839 F. Supp. 2d 184, 189 (D.D.C. 2012) (citations omitted). Courts will grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(a). More specifically, in a FOIA action to compel production of agency records, the agency "is entitled to summary judgment if no material facts are in dispute and if it demonstrates 'that each document that falls within the class requested either has been produced . . . or is wholly exempt from the [FOIA's] inspection requirements.'" Students Against Genocide v. U.S. Dep't of State, 257 F.3d 828, 833 (D.C. Cir. 2001) (quoting Goland v. CIA, 607 F.2d 339, 352 (D.C. Cir. 1978)). "To successfully challenge an agency's showing that it complied with the FOIA, the plaintiff must come forward with 'specific facts' demonstrating that there is a genuine issue with respect to whether the agency has improperly withheld extant agency records." Span v. DOJ, 696 F. Supp. 2d 113, 119 (D.D.C. 2010) (quoting DOJ v. Tax Analysts, 492 U.S. 136, 142 (1989)).

Summary judgment in a FOIA case may be based solely on information provided in an agency's supporting affidavits or declarations if they are "relatively detailed and non-conclusory," SafeCard Servs., Inc. v. SEC, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (internal quotations and citations omitted), and when they:

> describe the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record [or] by evidence of agency bad faith.

Military Audit Project v. Casey, 656 F.2d 724, 738 (D.C. Cir. 1981); see Beltranena v. Clinton, 770 F. Supp. 2d 175, 181–82 (D.D.C. 2011). In determining whether the defendant agency has met its burden in support of non-production, "the underlying facts are viewed in the light most favorable to the [FOIA] requester." Weisberg v. DOJ, 705 F.2d 1344, 1350 (D.C. Cir. 1983).

### III. LEGAL ANALYSIS

**A.     The Defendant's Motion for Summary Judgment**

The defendant argues that summary judgment is appropriate because it "conducted an adequate and reasonable search for responsive materials to [the] [p]laintiff's request." Def.'s Mem. at 6. The defendant argues also that it properly withheld fifty-four responsive documents pursuant to exemptions (b)(4) and (b)(5), see id. at 6–11, properly "invoked [e]xemption (b)(6) to protect names, home addresses, telephone numbers, and other personal information of individuals involved in the Skyland Shopping Center Project," see id. at 13, and that "it has established—with reasonable specificity—that all reasonably segregable, non-exempt information has been released to [the] [p]laintiff," id. at 14. The plaintiff contests neither the applicability of the exemptions nor the defendant's segregability determinations, and the Court

5

thus deems these matters conceded,[4] see Lewis v. District of Columbia, No. 10–5275, 2011 WL 321711, at *1 (D.C. Cir. Feb. 2, 2011) (per curiam) ("'It is well understood in this Circuit that when a plaintiff files an opposition to a dispositive motion and addresses only certain arguments raised by the defendant, a court may treat arguments that the plaintiff failed to address as conceded.'" (citation omitted)), and need only address the adequacy of the search.

When a FOIA requester challenges the adequacy of an agency's search for responsive records, "the agency must show, viewing the facts in the light most favorable to the requester . . . that it has conducted a 'search reasonably calculated to uncover all relevant documents.'" Steinberg v. DOJ, 23 F.3d 548, 551 (D.C. Cir. 1994) (quoting Weisberg, 745 F.2d at 1485). "The question is not 'whether there might exist any other documents possibly responsive to the request, but rather whether the search for those documents was adequate.'" Id. (emphasis in original). Thus, "the failure of an agency to turn up one specific document in its search does not alone render a search inadequate," for "the adequacy of a FOIA search is generally determined not by the fruits of the search, but by the appropriateness of the methods used to carry out the search." Iturralde v. Comptroller of Currency, 315 F.3d 311, 315 (D.C. Cir. 2003) (citation omitted); see also Meeropol v. Meese, 790 F.2d 942, 952–53 (D.C. Cir. 1986) ("[A] search is not unreasonable simply because it fails to produce all relevant material."). Moreover, the "[m]ere speculation that as yet uncovered documents may exist does not undermine the finding that the agency conducted a reasonable search for them." SafeCard Servs., Inc., 926 F.2d at 1201 (citation omitted).

"A FOIA search is sufficient if the agency makes 'a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the

---

[4] In any event, on review of the defendant's declarations and Vaughn index, the Court concludes that the defendant adequately demonstrates that the information withheld falls within the claimed exemptions.

information requested.'" Baker & Hostetler LLP v. U.S. Dep't of Commerce, 473 F.3d 312, 318 (D.C. Cir. 2006) (quoting Nation Magazine v. U.S. Customs Serv., 71 F.3d 885, 890 (D.C. Cir. 1994)). Although "[t]here is no requirement that an agency search every record system . . . , the agency cannot limit its search to only one record system if there are others that are likely to turn up the information requested." Oglesby v. U.S. Dep't of Army, 920 F.2d 57, 68 (D.C. Cir. 1990); see also Campbell v. DOJ, 164 F.3d 20, 28 (D.C. Cir. 1995). To establish the adequacy of the search, the "agency may rely upon reasonably detailed, nonconclusory affidavits submitted in good faith," Steinberg, 23 F.3d at 551, that "set[] forth the search terms and type of search performed, and aver[] that all files likely to contain responsive materials . . . were searched," Iturralde, 315 F.3d at 313–14 (citations and internal quotation marks omitted). "Agency affidavits are accorded a presumption of good faith," which "cannot be rebutted by 'purely speculative claims about the existence and discoverability of other documents.'" SafeCard Servs., Inc., 926 F.2d at 1200 (citation omitted).

Here, the defendant initially offered several declarations concerning the searches carried out by "senior HUD officials, who had oversight and/or involvement in the Skyland Shopping Center Project." Def.'s Mem. at 6; see also Def.'s Facts, Exs. 5 (Declaration of Michael D. Rose); 8 (Declaration of Michael Szupper); 9 (Declaration of Stanley Gimont); 10 (Declaration of Frances Bush). The defendant also offered another declaration which states that an attorney-advisor at HUD, Lawrence McDermott, "coordinated a thorough and exhaustive search for documents in response to . . . [the plaintiff's] FOIA request." Def.'s Mot., Ex. 13 (McDermott Decl.) ¶ 12. The plaintiff challenges the sufficiency of these declarations, arguing that they are "[t]hey do not describe search terms and the type of search performed" and "the statements of the four HUD employees that they searched their documents, records, and emails does not provide

7

detail about the type of search performed or the files and record systems searched." Pl.'s Opp'n at 17–18.

In response to the plaintiff's challenges, the defendant provided a supplemental declaration, which sets forth the search terms used, namely "'Skyland' 'Skyland Shopping Center' and 'Mittleman.'"[5] Def.'s Reply, Ex. 1 (Supplemental Declaration of Lawrence E. McDermott ("McDermott Suppl. Decl.")) ¶¶ 5–8. Further, the defendant indicates that searches were conducted "in HUD's internal electronic communication system and physical offices, using the search terms," Def.'s Reply at 2 (citing Def.'s Reply, Ex. 1 (McDermott Suppl. Decl.) ¶¶ 5–8), including searches in "Microsoft Windows and Microsoft Outlook for responsive documents and emails," Def.'s Reply, Ex. 1 (McDermott Suppl. Decl.) ¶¶ 5–8. The defendant also provides names of additional HUD employees who performed searches for responsive materials. See id. ¶¶ 9–11.

Another member of this Court has relied on supplemental declarations submitted with an agency's reply memorandum to cure deficiencies in previously submitted declarations where, as here, the "[p]laintiff filed no motion for leave to file a surreply challenging [the] defendant's supplemental declarations." See Judicial Watch, Inc. v. FDA, 514 F. Supp. 2d 84, 89 n.1 (D.D.C. 2007); see also Vest v. Dep't of Air Force, 793 F. Supp. 2d 103, 121 (D.D.C. 2011) (considering supplemental declaration submitted with reply memorandum in making adequacy determination). Because the McDermott declarations, when considered together, address the likely location of responsive records, the search terms used, where the searches were conducted, Def.'s Reply, Ex. 1 (McDermott Suppl. Decl.) ¶¶ 5–11, and aver that a "thorough and exhaustive search for documents," was conducted, Def.'s Mot., Ex. 13 (McDermott Decl.) ¶ 12, the Court

---

[5] The plaintiff's counsel in this matter is Elaine J. Mittleman, Esq. Presumably, her name was used as a search term because she had previously corresponded with the defendant about the Skyland Shopping Center. See Def.'s Facts ¶¶ 6-8.

finds that the defendant has sufficiently established that its search for responsive records was adequate.

The plaintiff next challenges the sufficiency of the declarations on the ground that they do not provide a time frame for the searches. Pl.'s Mem. at 18–19. However, agency declarations need not "set forth with meticulous documentation the details of an epic search for the requested records," Perry v. Block, 684 F.2d 121, 127 (D.C. Cir. 1982), but merely must "set[] forth the search terms and type of search performed, and aver[] that all files likely to contain responsive materials . . . were searched," Oglesby, 920 F.2d at 68. As the Court has already found, the defendant has sufficiently provided the required information.

The plaintiff also contends that the defendant did not explain why it identified four specific senior HUD employees as the appropriate individuals to conduct records searches in response to the plaintiff's FOIA request. Pl.'s Opp'n at 18. He notes that other individuals' names appear on emails produced by the defendant and asks why those individuals were not required to search for records. Id. However, one of the declarations reasonably explains that the four senior employees identified were officials "who had oversight of and involvement in the Skyland Shopping Center." Def.'s Mot., Ex. 13 (McDermott Decl.) ¶ 12. The defendant also explains that "the [additional] individuals that [the] [p]laintiff names are HUD employees in the subordinate chain of command . . . under Director Stanley Gimont," one of the four senior HUD employees whom the defendant initially identified. Def.'s Reply at 5 (citing Def.'s Reply, Ex. 1 (McDermott Supp. Decl.) ¶¶ 8–10). The defendant further explains that these additional individuals "have only drafts of the monitoring review letter, which was provided to [the] [p]laintiff, and duplicative emails, which were also provided to [the] [p]laintiff." Id. at 5–6 (citing Def.'s Reply, Ex. 1 (McDermott Supp. Decl.) ¶¶ 8–10). Despite these explanations, the

defendant performed additional searches, which produced only records duplicative of those already provided to the plaintiff. Def.'s Reply, Ex. 1 (McDermott Supp. Decl.) ¶¶ 9–11. These duplicates were provided to the plaintiff in a subsequent July 30, 2013 production. Def.'s Reply, Ex. 1 (McDermott Supp. Decl.) ¶¶ 9–10.

Finally, the plaintiff argues that additional records exist, stating that

> [t]here should be documents about the application to HUD for funds for the Skyland project and the approval by HUD of the application for funds. There should be records showing the amount of [Community Development Block Grant] funds for Skyland. There should be records about the monitoring of the Skyland project conducted in July 2011. . . . HUD should have documents about the appraisal and appraisal reviews of the properties at Skyland.

Pl.'s Opp'n at 19–20. He broadly asserts further that "there are numerous appraisal guidelines and regulations concerning use of federal funds to acquire property" and that "[i]n light of the extensive and lengthy involvement of HUD with the Skyland project, it seems unlikely that there are no other documents." Id. at 20–21. These conclusory and speculative assertions are insufficient. To overcome a motion for summary judgment, a plaintiff must provide more than "[m]ere speculation that as yet uncovered documents may exist." SafeCard Servs., Inc., 926 F.2d at 1201. Here, the plaintiff in one breath questions the scope of HUD's involvement with the Skyland project, see, e.g., Pl.'s Opp'n at 20 ("[D]oes HUD monitor whether the Skyland project met the national objective to benefit low and moderate income persons?"), and in the next insists that HUD's involvement was so substantial that the agency must have additional documents, id. at 21. The defendant's supplemental declaration flatly dispels the notion that HUD was as involved with the Skyland project as the plaintiff suggests:

> HUD's oversight is limited to ensuring grantees adhere to applicable [Community Development Block Grant] and federal requirements. . . . Under this grant program, the grantee is responsible and obligated to make their books and all supporting documentation available to HUD during normal business hours, <u>for inspection</u>, so that HUD can confirm that all . . . requirements are being met.

See Def.'s Reply, Ex. 1 (McDermott Supp. Decl.) ¶ 4 (emphasis added). In other words, while the records that the plaintiff seeks might exist, they are not in the defendant's possession. The Court is thus not persuaded that there exists a "substantial doubt" about the adequacy of the defendant's search. See Iturralde, 315 F.3d at 314 (citation omitted).

Because the plaintiff merely speculates about the existence of additional records, he has failed to overcome the presumption of good faith accorded to the defendant's declarations. Moreover, because the defendant's initial declarations and supplemental declaration set forth the information required, the Court is satisfied that the defendant's search was reasonable and adequate, and therefore grants the defendant's motion for summary judgment.

**B.     The Plaintiff's Motion for Document Supplementation**

The plaintiff requests that the Court order the defendant to supplement its document production. Pl.'s Mot. at 1. Specifically, the plaintiff alleges that the December 13, 2012 Monitoring Review Letter, which the defendant released to the plaintiff along with other responsive documents on February 8, 2013, Def.'s Facts ¶ 10 (citing Def.'s Mot., Ex. 7 (Monitoring Review Letter)), "described a number of documents that were to be submitted to HUD by certain deadlines" that were "roughly [within] the same time frame of" the Letter, Pl.'s Mot. at 3.

For records to be considered "agency records" subject to the FOIA, "an agency must either create or obtain the requested materials," and "must be in control of the requested materials at the time the FOIA request is made." Tax Analysts, 492 U.S. at 145–46 (citations and internal quotation marks omitted). Here, the defendant has explained that although the Monitoring Review Letter indicated that the defendant expected to receive from the District of Columbia documents responsive to the plaintiff's FOIA request "within 45 days of . . . December

11

13, 2012," the District "did not provide the requested materials until February 28, 2013." Def.'s Opp'n at 3. This was almost three weeks after the defendant made its February 8, 2013 document production to the plaintiff,[6] Def.'s Opp'n at 3; Def.'s Opp'n, Ex. 1 (May 16, 2013 Declaration of Lawrence E. McDermott ("May 2013 McDermott Decl.")) ¶ 6, and thus the agency had neither obtained nor was in control of the documents when its FOIA production was completed, much less "when the FOIA request [was] made," Tax Analysts, 492 U.S. at 145. Accordingly, the Court denies the plaintiff's motion for an order requiring the defendant to supplement its FOIA production.[7]

## IV. CONCLUSION

The Court concludes that the defendant conducted its searches in a manner that was reasonable calculated to uncover all responsive records, and that the plaintiff has failed to present sufficient evidence to rebut the defendant's presumption of good faith. Further, the defendant has provided an affidavit indicating that it did not have control of the additional documents that the plaintiff seeks at the time that he made his FOIA request. Accordingly, the Court grants the defendant's motion for summary judgment and denies the plaintiff's motion for the defendant to supplement its documents release.

---

[6] To be sure, and as discussed above, the defendant later produced additional documents on July 30, 2013, in response to the plaintiff's opposition to the defendant's motion for summary judgment. However, as discussed above, the additional document production was largely duplicative of materials that had been previously released to the plaintiff.

[7] The defendant additionally states that it has withheld the documents pursuant to FOIA exemption (b)(4). Def.'s Opp'n, Ex. 1 (May 2013 McDermott Decl.) ¶ 7. The plaintiff opted not to file a reply memorandum challenging the defendant's withholding, and has thus conceded this point. Cf. Cannon v. Wells Fargo Bank, N.A., 952 F. Supp. 2d 1, 11 (D.D.C. 2013) (deeming matters conceded where "the [p]laintiff's [r]eply [b]rief omit[ted] any reference to the defendants' opposition"); Williams v. Johanns, 245 F.R.D. 10, 14 (D.D.C. 2007) (denying plaintiffs' motion where the plaintiffs' initial memorandum of law was deficient, and the plaintiffs further failed to respond to the defendant's opposition with a reply brief). Accordingly, even if the defendant had been in control of the documents, the plaintiff would not be entitled to an order requiring the defendant to produce them.

**SO ORDERED** this 10th day of April, 2014.[8]

REGGIE B. WALTON
United Stated District Court

---

[8] The Court will contemporaneously issue an Order consistent with this Memorandum Opinion.